# IN THE COURT OF APPEALS OF IOWA

No. 21-0827
Filed July 20, 2022

**JAMES E. HARRELL,**
        Plaintiff-Appellant,

**vs.**

**DENVER FINDLEY & SONS, INC., WEST BEND MUTUAL INS. CO. and SECOND INJURY FUND OF IOWA,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

        A workers' compensation claimant appeals the district court's judicial review order.  **AFFIRMED IN PART AND REVERSED IN PART.**

        Joseph S. Powell of Thomas J. Reilly Law Firm, P.C., Des Moines, for appellant.

        James M. Ballard, Waukee, for appellees.

        Thomas J. Miller, Attorney General, and Sarah C. Timko, Assistant Attorney General, for appellee Second Injury Fund of Iowa.

        Considered by May, P.J., and Schumacher and Badding, JJ.

**MAY, Presiding Judge.**

A workers' compensation claimant appeals the district court's judicial review order. James Harrell, the claimant, argues the district court erred by affirming the Workers' Compensation Commissioner's (commissioner) allowance of a credit for the Second Injury Fund. Harrell also argues the district court erred by remanding for further proceedings before the agency.

As to the credit issue, we reverse. But we affirm the district court's remand order.

## I. Background Facts & Proceedings

Following a 2018 foot injury, Harrell filed a workers' compensation petition against his employer and the Second Injury Fund (Fund). Following an arbitration hearing, the Deputy Workers' Compensation Commissioner (deputy) decided a host of issues, two of which are relevant here. First, the deputy found that Harrell was "permanently and totally disabled." Second, the deputy determined that—in light of a recently enacted statute, Iowa Code section 85.34(2)(x) (2018)—the record did not allow a finding that the Fund was entitled to a credit because of a prior left knee surgery.

On intra-agency appeal, the commissioner concluded that—notwithstanding section 85.34(2)(x)—the Fund was entitled to a "credit of 81.4 weeks of the 37[%] permanent disability of" Harrell's "left total knee replacement." Additionally—although no party had raised the issue—the commissioner modified the deputy's "finding that [Harrell was] permanently and totally disabled." Instead, the commissioner found, Harrell had sustained only 75% industrial disability.

On judicial review, the district court affirmed the commissioner's determination that the Fund was entitled to a credit for Harrell's knee surgery. But the court concluded the commissioner should not have modified the deputy's finding of "permanent and total disability" without first providing the parties notice and opportunity to be heard. So the district court remanded this case "to the agency to give the parties an opportunity to brief and argue this issue in the proper forum." Harrell appealed.

## II. Standard of Review

The parties agree our review should be for correction of legal error. We agree and proceed accordingly. *See Gregory v. Second Inj. Fund of Iowa*, 777 N.W.2d 395, 397 (Iowa 2010) ("Interpretation of the workers' compensation statute is an enterprise that has not been clearly vested by a provision of law in the discretion of the commissioner. Thus, we will reverse the agency's decision if it is based on 'an erroneous interpretation' of the law." (citations omitted)).

## III. Discussion

Harrell argues (1) that the agency incorrectly interpreted and applied section 85.34(2)(x) and (2) the agency erred by independently raising and deciding the issue of Harrell's permanent disability. We address each claim in turn.

### A. Credit Where Credit is Due

In 2017, the legislature enacted H.F. 518, an act relating to workers' compensation. 2017 Iowa Acts ch. 23, § 9 (codified at Iowa Code § 85.34(2)(x)). As codified, it includes this provision:

> In all cases of permanent partial disability described in paragraphs "a" through "u", or paragraph "v" when determining functional disability and not loss of earning capacity, the extent of

> loss or percentage of permanent impairment shall be determined solely by utilizing the guides to the evaluation of permanent impairment, published by the American medical association, as adopted by the workers' compensation commissioner by rule pursuant to chapter 17A. *Lay testimony or agency expertise shall not be utilized in determining loss or percentage of permanent impairment* pursuant to paragraphs "a" through "u", or paragraph "v" when determining function disability and not loss of earning capacity.

Iowa Code § 85.34(2)(x) (emphasis added). The parties agree that—for present purposes—the "guides" means the Fifth Edition of the American Medical Association's Guides to the Evaluation of Permanent Injury (Guides).

With this background, we consider the commissioner's decision on the credit issue. First, the commissioner found "it is undisputed" that Harrell "underwent a total knee replacement prior to" his 2018 foot injury. The commissioner then consulted Table 17-33 in the Guides, which is entitled "Impairment Estimates for Certain Lower Extremity Impairments." Among other things, Table 17-33 includes impairment estimates for various knee procedures. For a "total knee replacement," the Table suggests impairment percentages of thirty-seven for a "good result," fifty for a "fair result," and seventy-five for a "poor result." So, as the commissioner reasoned, the Table requires a minimum "impairment rating of 37[%] for a total knee replacement." Accordingly, the commissioner concluded, "the Fund is entitled to" a credit "for the 37[%] permanent disability of [Harrell's] left total knee replacement."

Harrell raises two objections to this approach. First, he suggests that only a physician can fulfill the statutory requirement of determining "the extent of loss or percentage of permanent impairment . . . solely by utilizing the" Guides. As Harrell notes, the Guides themselves expressly anticipate that *physicians* will

determine impairments. *See* Am. Med. Ass'n, Guides to the Evaluation of Permanent Impairment 3 (Linda Cocchiarella & Gunnar B.J. Andersson eds., 5th ed. 2001) (noting that, under the Guides, the physician's role is to determine impairment). Harrell also suggests that when a non-physician commissioner or deputy commissioner uses the Guides to determine impairment, they necessarily rely on "agency expertise"—a source forbidden by section 85.34(2)(x).

For purposes of this appeal, we need not decide whether non-physicians may properly use the Guides to determine impairment. We leave that question for another case. We focus instead on Harrell's argument that the commissioner's thirty-seven percent impairment determination was inconsistent with section 85.34(2)(x)'s prohibition on the use of "lay testimony" to determine "loss or percentage of permanent impairment." On this point, we believe Harrell is correct. The commissioner's impairment determination was built on the assumption that Harrell had undergone a total knee replacement surgery. But no physician or other expert testified about a total knee replacement surgery. And no records from a total knee replacement surgery were entered as exhibits.[1] The only evidence of a total knee replacement surgery is Harrell's own testimony—the very "lay testimony" forbidden by section 85.34(2)(x). So it appears the commissioner's determination violated the statute.

In response, the Fund notes "the plain language of" section 85.34(2)(x) does not bar the commissioner "from using lay testimony to determine the claimant's

---

[1] The Fund notes that Harrell's medical records refer to a "Knee Surgery Left" and a "total knee *arthroscopy*." (Emphasis added.) The Fund does not point us to any records of a total knee *replacement*.

diagnosis or course of care." As explained, though, the plain language of section 85.34(2)(x) *does* bar the commissioner from using lay testimony "in determining loss or percentage of permanent impairment." And here, "determining loss or percentage of permanent impairment" necessarily included a determination of Harrell's "course of care," that is, whether he had a total knee replacement or not. So, at least in this case, the plain language of section 85.34(2)(x) prohibited the commissioner from using lay testimony to decide whether a total knee replacement occurred.

The Fund also suggests that, by precluding reliance on lay testimony, section 85.34(2)(x) "make[s] it both more costly and more challenging for a claimant to establish a permanent injury and entitlement to permanency benefits." Policy arguments like those are better directed to the people's elected representatives. *See* Iowa Const. art. III, § 1 (prohibiting members of the judicial branch from exercising powers of the legislative branch or the executive branch). "The court's job is to carry out the legislative project, not to change it in conformity with the judge's view of sound policy." Frank H. Easterbrook, *Foreword* to Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts*, at xxi (2012).

### B. To Remand or To Reinstate?

Next, we confront Harrell's procedural argument. When the Fund appealed the deputy's decision, neither the Fund nor the employer asked the commissioner to review the deputy's permanent disability finding. Even so, the commissioner modified the deputy's finding. The district court remanded to the commissioner to "give the parties an opportunity to brief and argue this issue in the proper forum."

Now on appeal, Harrell asks we reinstate the deputy's finding, while the Fund urges remand.

After consideration, we believe a remand is most appropriate (if not required) under *Aluminum Company of America v. Musal*, 622 N.W.2d 476, 478 (Iowa 2001). So we affirm the district court on this point.

## IV. Conclusion

We reverse the district court's decision upholding the commissioner's grant of a credit to the Fund for a knee surgery. We affirm the district court's remand to the commissioner for further proceedings with respect to Harrell's permanent disability rating.

**AFFIRMED IN PART AND REVERSED IN PART.**